UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X
UNITED STATES OF AMERICA,

              - against -                            MEMORANDUM & ORDER
                                                                04-CR-159 (NGG)

FRANK DOLNEY,
QUENTIN QUINTANA, also known as
      "Christopher Quintana,"
WILLIAM G. BROWN,
GARY TODD, and,
VLAD GOLDENBERG,

              Defendants.
----------------------------------------------------------X
GARAUFIS, United States District Judge.

Defendants Frank Dolney, William Brown and Vlad Goldenberg have brought a number of pre-trial motions to which the government has responded. Oral argument was heard on these motions on April 22, 2005. The motions brought in common by the defendants are considered in turn, followed by those brought individually.[1]

**I.     Dismissal of the Indictment**

All three defendants move for dismissal of the indictment, in part or in whole, on the grounds that it is impermissibly vague and facially insufficient. Dolney argues that the court should dismiss Counts One through Five and Seven because they fail to provide "specifics" regarding the charges. (Dolney Br. at 3.) Brown moves for dismissal of the indictment in its entirety on the grounds that it is conclusory and fails to allege essential facts, particularly

---

[1] At oral argument the court established a briefing schedule to address potential <u>Bruton</u> issues raised by the government that may affect whether to sever the defendants. Accordingly, the court reserves decision on the defendants' severance motions until it has received all of the briefing on this issue.

1

concerning his role in the alleged conspiracy. (Brown Br. at 7-11.) Goldenberg moves for dismissal of Counts Two, Three and Six because he claims they fail to apprise him of his role in the alleged conspiracy, by, inter alia, failing to: (1) allege specific acts undertaken by him; (2) identify victims of his alleged conduct; and (3) allege sufficient facts to determine loss. (Goldenberg Br. at 10.) The court first evaluates the sufficiency of the indictment in general and then addresses Goldenberg's concerns regarding the identification of victims and loss.

"It is well settled that 'an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)); see also United States v. Alfonso, 143 F.2d 772, 776 (2d Cir. 1998) ("an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.") (quotations and citations omitted). Additionally, the Second Circuit has stated that the Indictment Clause "requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." United States v. Walsh, 194 F.3d 37, 45 (2d Cir. 1999) (quoting United States v. Abrams, 539 F. Supp. 378, 384 (S.D.N.Y. 1982)). According to these standards, the superceding indictment in this case is plainly sufficient.

The indictment adequately sets forth the charges against the defendants, tracking the language of the relevant statutes and providing a time frame and location in which the conduct is alleged to have occurred. Further, over six pages of the indictment detail the manner in which

2

the defendants' "boiler room" conspiracy is alleged to have functioned. This outline includes identifying: (1) the brokerage firms involved; (2) the specific stocks that were used as part of the conspiracy; and (3) the roles that each defendant is generally alleged to have played. The indictment also explains the contours of the "secret kickback" scheme through which the defendants are alleged to have created artificially high prices for the stocks involved before selling them off at a profit. This general outline of the scheme is incorporated and re-alleged in each count of the indictment, meaning that it provides context for the specific allegations in each count.

The information contained in the indictment is more than sufficient to apprise the defendants of the nature of the alleged conspiracy and their roles within it. There is simply no requirement that the government provide detailed information of the kind the defendants seek. See United States v. Cephas, 937 F.2d 816, 823 (2d Cir.1991) ("Although the government did not list the specific activities which showed how he furthered the criminal enterprise or the conspiracy, such specific acts need not be alleged with respect to every named defendant, if the indictment is otherwise sufficient and names the other persons involved in the criminal activity.")

The indictment also provides many specific examples of the conduct at issue in this case. For Count One, the securities conspiracy charge, the government identifies twenty six overt acts of fraudulent sales to customers. These overt acts name all of the defendants at least twice, but generally much more frequently. Based on these examples, the defendants should have a sufficient understanding of the conduct for which they are being tried. The substantive money laundering counts, Counts Eight through Sixteen, also provide a number of specific details.

Each count relates to a particular transaction for which the date, originating bank or broker, source entity and amount are provided.

The defendants' claims that they have not been apprised of their roles in particular counts are without merit. The specific counts of the indictment only need to be coupled with the outline of the scheme contained in the indictment's preamble for the defendants to understand what their roles are alleged to have been in terms of a specific count. For instance, Goldenberg complains that he does not know his "specific involvement in the alleged offense" set out in Count Two, which charges securities fraud in connection with GeneThera. But far from having to rely only on the statutory language regarding securities fraud contained in this count, he should be aware from the remainder of the indictment that he is alleged to have acted as an unlicensed broker who received secret kickbacks in order to induce Delta's customers to buy GeneThera at artificially inflated prices.

*1.     Goldenberg's Loss and Victims Arguments*

In addition to echoing the arguments of Brown and Dolney that the indictment should be dismissed because it does not provide sufficient detail concerning the defendants' conduct, Goldenberg also contends that the indictment is defective for failing to identify specific victims of the alleged scheme or even the total number of individuals defrauded and because it does not indicate the total amount of loss alleged. (Goldenberg Br. at 11.) Notably, Goldenberg offers no support for his assertion that either victims or the amount of loss are required components of an indictment alleging securities fraud. The court denies this request "because such information is simply not required to be disclosed, given the fact that the Indictment provides a sufficient description of the nature of the crimes charged and who was involved." United States v.

Dacunto, No. 00-CR-620, 2001 WL 13343, at *5 (S.D.N.Y. Jan. 5, 2001) (rejecting a similar request in a securities fraud conspiracy case).[2] Because the indictment alleges that the specific stocks were sold through a fraudulent scheme, the identity of the buyers involved is of secondary importance to the nature of the underlying scheme, which, if proven, would have made all sales fraudulent regardless of the buyer. Cf. United States v. Davidoff, 845 F.2d 1151, 1154 (2d Cir. 1988) (finding district court exceeded discretion by denying bill of particulars because "it is simply unrealistic to think that a defendant preparing to meet charges of extorting funds from one company had a fair opportunity to defend against allegations of extortions against unrelated companies, allegations not made prior to trial.").

## II.    Access to Grand Jury Transcripts

Brown also moves for access to the grand jury proceedings and contends that their contents will justify dismissing the indictment on the grounds that there was insufficient evidence to support returning the indictment and also that there were procedural defects before the grand jury. This motion is without merit for a variety of reasons.

Brown first contends that "upon information and belief - the basis being a review of the indictment and an investigation of the matter - the defendant believes that the evidence submitted to the Grand Jury regarding this defendant's 'involvement' was insufficient, as a matter of law, to satisfy the charges in the indictment." (Brown Br. at ¶ 30.) Specifically, he argues that there is no evidence linking Brown to the companies (Delta Asset Management and B&G Consulting) through which the illegal sales to customers were allegedly conducted. The problem with this

---

[2] The court also notes that the government's February 28, 2005 motion in limine estimates the proceeds from the defendants' scheme at over $21 million dollars.

argument is that it is well settled that "[a]n indictment, if valid on its face, may not be challenged on the ground that it is based on inadequate evidence." United States v. Casamento, 887 F.2d 1141, 1182 (2d Cir.1989); see also Costello v. United States, 350 U.S. 359, 409 (1956) ("An indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.").

Brown next argues that access to the grand jury transcript is warranted because the grand jury was procedurally defective. In support of this position, he only offers a variety of cursory allegations made "upon information and belief":

> (1) the Grand Jury was illegally constituted; (2) the proceedings were conducted before fewer than sixteen Grand Jurors; (3) fewer than twelve legal Grand Jurors concurred in the finding of the indictment; (4) the legal instructions given to the Grand Jury were improper; and (5) each and every witness who testified before the Grand Jury in this case were not properly sworn and placed under oath.

(Brown Memo. at ¶ 36.)

Again, Brown is far wide of the mark. "A review of grand jury minutes should not be permitted without concrete allegations of Government misconduct." United States v. Leung, 40 F.3d 577, 582 (2d Cir. 1994). Here, Brown simply appears to allege every conceivable procedural defect that could occur before a grand jury in a frivolous attempt to gain access to the grand jury minutes.

Brown's motion for access to the grand jury transcript is denied.

### III. Striking Surplusage from the Indictment

Dolney seeks to have the words "thinly capitalized," which are used to describe the stocks employed in the conspiracy, and paragraphs 10-13, in which the kickback scheme is

6

outlined, struck from the indictment as improper surplusage under Fed.R.Crim.P. 7(d). Brown moves to strike paragraphs 31-34, which contains the government's forfeiture allegations, on the same ground.

These motions are without merit. "Motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial." United States v. Mulder, 273 F.3d 91, 99 (2d Cir. 2001) (quoting United States v. Scarpa, 913 F.2d 993, 1013 (2d Cir.1990)).

Here, the words "thinly capitalized" are relevant to the crime charged because they provide an explanation of the manner in which the conspiracy was able to function by obtaining "common stock and stock warrants for little or no consideration." (Indict. at ¶ 9.) Further, these words are not inflammatory or prejudicial. Although Dolney asserts that their inclusion will suggest to the jury that "from the outset there was something illegal about the stocks involved in this case" (Dolney Br. at 19), he provides no explanation for why this would be so. Describing the level of capitalization of the companies simply does not present a risk of prejudice: there is nothing inherently untoward with a company being thinly capitalized. And while it could be argued that this description might confuse the jury, this slight risk does not outweigh the description's value in explaining how the conspiracy was able to proceed.

Dolney's argument to strike paragraphs 10-13 is similarly unavailing. Dolney contends that these paragraphs should be struck because there is nothing in the counts of the indictment that alleges that the kickback scheme detailed in paragraphs 10-13 occurred or that it was illegal. This argument strains credibility. Each and every count of the indictment repeats and incorporates these paragraphs as if fully set out therein. Therefore Dolney's argument that the

7

counts of the indictment do not allege that the kickback scheme occurred is nothing short of puzzling. Similarly, the fact that the indictment does not label the alleged kickback scheme as "illegal" is of no moment. The illegality at issue in the indictment stems from the allegations contained in the conspiracy and fraud counts that the defendants employed a scheme to artificially inflate stock prices without disclosing the existence of this scheme to their customers. There is simply no requirement that the conduct or omitted information giving rise to a violation of Rule 10b-5 of the Rules and Regulations of the SEC, 17 C.F.R. § 240.10b-5, must itself be illegal separate and apart from its illegality under the securities laws.

Finally, Brown's argument that the forfeiture allegations, paragraphs 31-34, must be struck is frivolous. Brown claims that these paragraphs are irrelevant to the charges and are inflammatory and highly prejudicial. Brown, however, fails to note that under Fed.R.Crim.P. 7(c)(2), "[n]o judgment of forfeiture may be entered in a criminal proceeding unless the indictment or the information provides notice that the defendant has an interest in property that is subject to forfeiture . . ." See also Fed.R.Crim.P. 32.2(a). Thus, if the government wishes to seek forfeiture in this case, it must necessarily include such allegations in the indictment.

For these reasons, Brown and Dolney's motions to strike surplusage from the indictment are denied.

**IV.     Bill of Particulars**

All three defendants have moved for a bill of particulars, requesting varying levels of specificity. The information requested includes, inter alia, the specific acts each co-conspirator performed giving rise to the conspiracy, dates on which individuals became members of the conspiracy, identities of victims, and the losses involved. The defendants argue that this

information is necessary for their preparation for trial and to avoid surprise, as well as to prevent double jeopardy for future prosecutions.

Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars in order to enable him "to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987). The decision whether to order the filing of a bill of particulars is a decision that rests within the sound discretion of the district court. United States v. Barnes, 158 F.3d 662, 665-66 (2d Cir. 1998). A bill of particulars must be granted "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." Walsh, 194 F.3d at 47 (quoting United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990) (internal quotation marks omitted)). The Second Circuit has also instructed that a bill of particulars should not be granted where the government has made sufficient disclosures concerning its evidence and witnesses by other means. Id. A bill of particulars, however, may be appropriate where the government's pre-trial discovery disclosures are so voluminous that the defendant remains in the dark about the specific acts of which he is accused. United States v. Bortnovsky, 820 F.2d 572, 575 (2d Cir. 1987). With these principles in mind, I now turn to the specific requests for particulars submitted by the defendants.

After hearing oral argument on this issue, which included discussion of the specificity and usefulness of the indictment, discovery and other material in allowing the defendants to prepare for trial, I am satisfied that the defendants have access to sufficient information to meet the Second Circuit standards above; thus, no bill of particulars is warranted.

As previously discussed, the indictment in this case does not leave the defendants in the dark about the charges they face or the manner in which the government believes their "boiler room" scheme operated to defraud brokerage customers. The government has also divulged more details concerning the alleged conspiracy in its February 28, 2005 motion in limine to admit testimony concerning past securities fraud with certain cooperating witnesses. This motion expounds on the genesis of the alleged conspiracy as well as amplifying the allegations contained in the indictment concerning each defendant's role within it. In addition to this information, the defendants have been provided with voluminous discovery. The defendants contend that rather than being useful, the massive volume of discovery makes it even harder to discern the acts for which the defendants will be made to answer at trial. During oral argument, however, the government offered to make available to the defendants more precisely indexed discovery from a previous SEC case against many of the same individuals, which it suggested may alleviate the defendants' concerns with navigating the material. While this information may not satisfy all the requests contained in the defendants' motions, "demands for particular information with respect to where, when, and with whom the Government will charge the defendant with conspiring are routinely denied." United States v. Trippe, 171 F.Supp. 2d 230, 240 (S.D.N.Y. 2001) (collecting cases).

The Second Circuit's standard for requiring a bill of particulars, as articulated in Barnes and Walsh, is unmet in this case, and I conclude that the indictment coupled with the discovery provided by the government adequately notifies the defendants of the acts for which they are being charged. The defendants will be able to mount a proper defense to the charges, and no bill of particulars is necessary.

## V. Discovery Requests

### A. *Identities and Interviews of Cooperating Witnesses*

Goldenberg seeks to have the identities of the cooperating witnesses revealed, or at least to have these witnesses made available to be interviewed in court. He argues that the government has indicated that the majority of its case will be based on these witnesses and thus it is important for him to have access to them in advance.

"[D]isclosure of the identity or address of a confidential informant is not required unless the informant's testimony is shown to be material to the defense." United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988). Further, to merit disclosure "it is not sufficient to show that the informant was a participant in and witness to the crime charged." Id. "The defendant bears the burden to demonstrate the need for the extraordinary remedy of disclosure." United States v. Muyet, 945 F.Supp. 586, 602 (S.D.N.Y. 1996) (quotations omitted).

Here, Goldenberg mainly relies on the fact that the witnesses have knowledge of the alleged crimes as the basis for learning their identities. Besides these general factors, which would presumably be applicable to any defendant in any case, he does not make a particularized argument regarding the need for his disclosure to further his defense. Cf. DiBlasio v. Keane, 932 F.2d 1038, 1043 (2d Cir. 1991) (in habeas, finding that defendant had right to disclosure of witness where entrapment was his only defense and he had "introduced evidence which, if believed, would establish this defense"). For this reason, the motion for disclosure of the cooperating witnesses or their availability to be interviewed is denied.

### B. *Identities of Unindicted Coconspirators*

Dolney requests that the court direct the government to provide a list of the unindicted

coconspirators and that its failure to do so will seriously prejudice his ability to prepare for trial. (Dolney Br. at 8.)

The determination of whether to compel the government to provide a defendant with the identities of unindicted coconspirators is well within the discretion of the district court. See United States v. Gotti, 784 F.Supp. 1017, 1019 (E.D.N.Y. 1992) (Glasser, J.) ("the refusal of a district court to direct the filing of a bill of particulars as to the names of unindicted coconspirators is not an abuse of discretion"). Because the court finds that Dolney has been provided with sufficient information and factual detail of the charges he faces through the indictment, the voluminous discovery provided by the government, and other representations made by the government, the motion is denied.

C. *Witness List*

Dolney also moves to compel the government to produce a witness list. He argues that this list would greatly benefit his defense by allowing him to focus on relevant documents among the discovery provided. Further, he contends that there is no risk to the witnesses because there has been no showing that the witnesses would be subject to intimidation. The government responds correctly that Dolney has not met the requisite standard of making a "specific showing that disclosure is both material to the preparation of his defense and reasonable in light of the circumstances surrounding his case." United States v. Cannone, 528 F.2d 296, 301 (2d Cir. 1975). Dolney's general assertion that access to a witness list would benefit his preparation for trial is simply insufficient to justify its disclosure at this point. Moreover, "the possible disclosure of the Government's witness list well in advance of trial 'should be balanced against the possible dangers accompanying disclosure (*i.e.*, subornation of perjury, witness intimidation,

and injury to witnesses')." United States v. Coffey, --- F.2d --- , 2005 WL 705299 (E.D.N.Y. Mar. 29, 2005) (Glasser, J.) (quoting United States v. Cafaro, 480 F.Supp. 511, 520 (S.D.N.Y.1979)). Here, where the trial is scheduled for over four months away, it is too early for the court to make such a determination. See id. Accordingly, Dolney's motion is denied without prejudice; he may refile the motion if he believes he can articulate a sufficient basis for the court to grant it.

    D.    *Exhibit List*

Dolney makes another request for the government to be compelled to turn over its exhibit list. The government responds that it is willing to turn over such a list, along with copies of the exhibits, three weeks prior to trial, reserving the right to supplement the list at any time, including during trial, in good faith. During oral argument, the court encouraged the government to turn over the list as far in advance of trial as possible and the government expressed a willingness to do so dependent on the level of its preparation for trial. The court also instructed the defendants that it would entertain a motion to delay the commencement of the trial, should it prove necessary. For these reasons, Dolney's motion is denied but the court expects that the defendants will have an exhibit list well within the time needed to prepare for trial.

    E.    *Summary Exhibits and Charts*

Dolney requests that the government be compelled at this time to turn over any summary exhibits or charts that it plans to use at trial. The government responds that it is willing to turn over drafts of such material five days prior to trial on the condition that the defense not use the drafts for any purpose during trial. The government also requests the right to revise or supplement its summary evidence in good faith at any time prior to trial.

As with the exhibit list, the court is satisfied that the government's proposed schedule is sufficient to allow the defendants sufficient time to prepare for trial. Again, should the defendants require more time once they have received these exhibits, the court is willing to entertain a motion to delay commencement of the trial.

  *F.*  *Immediate Production of <u>Brady</u> and <u>Giglio</u> Material*

The defendants have requested that the government be required to immediately turn over all material that it must disclose under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 405 U.S. 150 (1972). In response, the government indicates that it is aware of and will continue to comply with its ongoing obligations under both <u>Brady</u> and <u>Giglio</u>.

At oral argument, the court directed the government to double check to ensure that it was not in possession of any material that should be produced under <u>Brady</u> or <u>Giglio</u> and the government expressed a willingness to do so. The court is satisfied that the government understands the importance of continuing to comply with its obligations to turn over such material far enough in advance of trial that it can be of use to the defense. See <u>United States v. Coppa</u>, 267 F.3d 132, 144 (2d Cir. 2001) ("we reiterate the longstanding constitutional principle that as long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner. There is no *Brady* violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial, or at a plea proceeding."). Accordingly, the defendants' motion is denied.

**VI.**  **Preclusion of Government Expert Testimony**

Dolney moves for a prophylactic order precluding the government from using expert

14

testimony at trial apart from that of the expert it has already served notice it intends to call as a witness. The government indicated on March 2, 2005 that it planned to call Professor Steven Thel to testify concerning the securities industry. Dolney does not object to Professor Thel's testimony, but apparently seeks a blanket order preventing the government from using any other expert testimony at trial. For its part, the government indicated at oral argument that it does not currently intend to use any expert witnesses beside Professor Thel.

Because there is currently no actual dispute about the government's use of expert testimony and because the trial in this case is not scheduled until September 2005, Dolney's motion is denied. If the government actually seeks to offer additional expert testimony in the future, the defense may then raise its objections.

## VII. Motion to Suppress Statements

Brown moves to suppress the introduction at trial of any statements offered by him because he claims that the government has not provided him with timely notice of such statements. The government, however, indicates that on May 17, 2004 it provided the defense with copies of transcripts of two on-the-record testimonies that Brown gave before the Securities and Exchange Commission.

During oral argument, it became apparent that the only issue regarding Brown's statements was whether Brown was adequately represented by counsel at the second of those hearings. In order to resolve this question, the government indicated that it would provide a copy of the SEC's form 1662 that was given to Brown prior to his testimony setting out his right to have counsel present. If defense counsel's review of this document does not allay its concerns, the motion may be renewed, but it is currently denied without prejudice.

15

**IX.     Asset Forfeiture Allegations**

Goldenberg challenges the government's inclusion of forfeiture allegations in the indictment on a number of fronts. He first argues that the allegations are "unconstitutionally vague" because the indictment does not include "calculations or estimates of loss sufficient to provide notice under Rules 7 and 32.2 of the Federal Rules of Criminal Procedure." (Goldenberg Mem. at 17.)  In the alternative, he contends that the trial and forfeiture stages of the proceeding should be combined so that all factors concerning punishment can be adjudicated beyond a reasonable doubt. These motions, which are considered in turn, are denied.

   *1.     Vagueness*

Goldenberg first argues that because the forfeiture allegations "fail[] to identify calculations or estimates of loss sufficient to provide notice," they must be dismissed for being unconstitutionally vague. (Goldenberg Br. at 17.)

Under Rule 7(c)(2) of the Federal Rules of Criminal Procedure, a forfeiture allegation must "provide[] notice that the defendant has an interest in property that is subject to forfeiture in accordance with the applicable statute." See also Fed.R.Crim.P. 32.2(a) ("A court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property . . ."). As the advisory committee note to Rule 32.2(a) explains:

> As courts have held, subdivision (a) is not intended to require that an itemized list of the property to be forfeited appear in the indictment or information itself. The subdivision reflects the trend in caselaw interpreting present Rule 7(c). Under the most recent cases, Rule 7(c) sets forth a requirement that the government give the defendant notice that it will be seeking forfeiture in accordance with the applicable statute. It does not require a substantive allegation in which the property subject to forfeiture, or the defendant's interest in the property, must be described in detail.

16

Fed.R.Crim.P. 32.2(a) advisory committee note (2000); see also 3 Wright, King & Klein, Federal Practice and Procedure: Criminal 3d § 545, at 442-43 (2004) ("The government's notice to the defendant under Rule 32.2 need only inform the defendant it will be seeking forfeiture in accordance with the applicable statute.").

Here, the forfeiture allegations provide notice to the defendants that the government intends to seek forfeiture in connection with Counts One through Sixteen, identify the statutory section upon which the government relies, and indicate that the government seeks "any property constituting or derived from proceeds obtained directly or indirectly as a result" of the charged offenses. (Indict. at ¶ 31.) Further, as discussed above, the government has informed the defendants that it estimates the proceeds of the conspiracy to be in the neighborhood of $21 million. Based on the information it has provided, the government has satisfied its burden under Rule 7(c)(2). Contrary to Goldenberg's assertion, the government is not required to provide calculations or estimates of loss; it is sufficient that the government has indicated that it would seek "any" proceeds derived from the offenses. See United States v. Grammatikos, 633 F.2d 1013, 1024 (2d Cir. 1980) ("The plain language of Rule 7(c)(2) requires only that the extent of the interest or property subject to forfeiture be alleged. That condition was satisfied here since the superseding indictment announced that the government would seek all of appellant's interest or property in the illicit enterprise of which he was the sole proprietor."). Accordingly, the court finds that the forfeiture allegations were pled with sufficient particularity.

    2.    *Reasonable Doubt*

Goldenberg argues that if the court does not dismiss the forfeiture allegations, at a minimum, it should combine the trial and forfeiture stages of the proceeding so that all factors

concerning punishment can be adjudicated beyond a reasonable doubt. Goldenberg's argument is premised on the assumption that the Supreme Court's recent decisions in United States v. Booker, --- U.S. ---, 125 S.Ct. 738 (2005), and Blakely v. Washington, --- U.S. ---, 124 S.Ct. 2531 (2004), alter the standard of proof applicable to criminal forfeiture allegations and demand that the jury make the relevant findings beyond a reasonable doubt.

Before turning to the issue of whether forfeiture must be proven beyond a reasonable doubt, the court addresses Goldenberg's request to inject issues of punishment into the trial itself by having the jury consider aspects of the defendants' punishment in combination with their deliberations about guilt. While a defendant has a right to request that the jury make a determination on forfeiture under Fed.R.Crim.P. 32.2(b)(4), the rule is clear that this procedure occurs only "in a case in which a jury returns a verdict of guilty." Bifurcating the determinations of guilt and forfeiture ensures that the jury is neither distracted nor influenced by considerations of the defendants' potential punishment. See United States v. Cantu, 167 F.3d 198, 207 (5th Cir. 1999) ("Such a bifurcated trial--using, of course, only one jury--is not only convenient for the judge and fairer to the defendant. It also prevents the potential penalty of forfeiture from influencing the jurors' deliberations about guilt or innocence.") (quotations and citations omitted). Combining the two decisions is both unnecessary and potentially harmful. Indeed, Goldenberg has offered no explanation for why the two phases should be considered jointly, only outlining how the post-Booker landscape allows the court to employ such a procedure.

Even if Goldenberg's argument is limited to only a consideration of whether proof beyond a reasonable doubt should be used in the bifurcated forfeiture proceeding, it is still unavailing. Although forfeiture is a component of a defendant's punishment, see Libretti v.

18

United States, 516 U.S. 29, 41 (1995), this fact alone does not mean that it falls prey to the constitutional infirmities addressed in Blakely and Booker. In those cases, the Supreme Court's concern was for judicial fact finding that raised a defendant's sentence beyond the statutory maximum authorized by the facts found by the jury and therefore violated the jury trial requirements of the Sixth Amendment. See, e.g., Booker, 125 S.Ct. at 756 ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."). Because forfeiture determinations do not run the risk of exceeding a statutory maximum, there is no need for the heightened safeguard of requiring a jury to make findings beyond a reasonable doubt.

The statutes under which the defendants are charged prescribe forfeiture of any property related to the criminal conduct at issue upon the jury's determination of guilt. Thus, for purposes of forfeiture's relationship to the Sixth Amendment, the only essential fact that must be found by the jury is the defendants' guilt. See Libretti, 516 U.S. at 49 ("the nature of criminal forfeiture as an aspect of sentencing compels the conclusion that the right to jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection."). Once a verdict is reached, the process of identifying assets for forfeiture does not threaten to exceed a statutory maximum because the statutes impose no such statutory limits --- the only cap in place is the amount of property that is attributable to the underlying criminal conduct. Put another way, "criminal forfeiture provisions do not include a statutory maximum; they are open-ended in that *all* property representing proceeds of illegal activity is subject to forfeiture." United States v. Messino, 382 F.3d 704, 713 (7th Cir. 2004) ("conclud[ing] that *Blakely*, like *Apprendi*, does not

19

apply to forfeiture proceedings") (emphasis in original).  For this reason, the factual findings by either the judge or jury concerning what assets are subject to forfeiture will impose a punishment that has already been authorized by the jury's verdict; a result not prohibited by Booker.

Goldenberg's motion is denied.  Should a defendant request that the jury decide the issue of forfeiture under Fed.R.Crim.P. 32.2(b)(4), the court will instruct the jury that it must do so based on a preponderance of the evidence standard.

## XI. CONCLUSION

For the foregoing reasons, the defendants' motions are DENIED.


SO ORDERED.

Dated: May 3, 2005                                          /s/ Nicholas Garaufis
       Brooklyn, NY                                         NICHOLAS G. GARAUFIS
                                                            United States District Judge