UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X
UNITED STATES OF AMERICA,

                - against -                       MEMORANDUM & ORDER
                                                      04-CR-159 (NGG)

FRANK DOLNEY,
QUENTIN QUINTANA, also known as
      "Christopher Quintana,"                         **NOT FOR PUBLICATION**
WILLIAM G. BROWN,
GARY TODD, and,
VLAD GOLDENBERG,

                Defendants.
-------------------------------------------------------X
GARAUFIS, United States District Judge.

       Defendants Frank Dolney, William G. Brown and Vlad Goldenberg are scheduled to go to trial on September 19, 2005 to face charges relating to their alleged participation in a "boiler room" securities fraud scheme. On April 22, 2005, oral argument was heard concerning the defendants' pre-trial motions. In a May 3, 2005 Memorandum & Order ("M&O") the court denied the relief requested by the defendants. This M&O addresses three in limine motions brought by the government to introduce at trial (1) evidence of earlier similar uncharged conduct involving the defendants, (2) a glossary of securities terms to assist the jury in connection with the testimony of the government's expert witness, Professor Steven Thel, and (3) statements made by Goldenberg pursuant to a proffer agreement with the government, should one of the exceptions allowing their use contained in the agreement arise during trial. As discussed at the April 22 hearing, the court reserved ruling on these motions until the defendants had an opportunity to respond. These motions are now considered in turn.

1

I.  **Introduction of Evidence Concerning Uncharged Conduct**

The government seeks to introduce evidence that defendants Brown, Dolney and Goldenberg were engaged in an uncharged conspiracy involving the government's cooperating witnesses from approximately 1997 through June 1999. These witnesses are expected to testify that this conspiracy involved several of the stocks named in the instant charges and operated in a similar fashion by using fraudulent kickbacks paid to brokers to artificially inflate the price of stocks in which some of the defendants held an interest.

The government first argues that this testimony should be directly admissible without regard to Fed.R.Evid. 404(b) because it is evidence that relates directly to the charged conspiracy. In pressing its argument, the government relies on United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000), which held that:

> evidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.

The government contends that the proposed testimony fits all three of the categories enumerated in Carboni. In the alternative, the government argues that the evidence is admissible under Rule 404(b) of the Federal Rules of Evidence because it explains the relationships between the defendants and the cooperating witnesses and proves the defendants' knowledge and intent with respect to the charged conspiracy. The defendants respond that the issue of the admissibility of this evidence is properly governed by Rule 404(b), under which it should not be admitted because it is unduly prejudicial and would be used only to show criminal propensity, or would tend to confuse the jury.

While the government's argument to directly admit the evidence is not without its appeal, I conclude that the admissibility of the evidence must be considered instead under Rule 404(b). The government's proffered testimony provides relevant background to the charged conduct but it is not so tightly connected to the alleged conspiracy that is the subject of this case that it clearly represents intrinsic evidence. "[W]here it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b)." United States v. Nektalov, 325 F. Supp. 2d 367, 372 (S.D.N.Y. 2004).

In particular, two factors militate in favor of applying Rule 404(b). The first is that the subject of the testimony relates to conduct that is alleged to have occurred two years before the charged conspiracy. This lapse in time cuts against a finding that the earlier conduct is "inextricably intertwined" with the later alleged conspiracy or "necessary" to explain events that occurred two years later. Close timing between intrinsic evidence and the charged conduct has featured significantly in the Second Circuit's decisions applying the standard set out in Carboni. In Carboni itself, the court looked primarily to the fact that the intrinsic evidence that the district court admitted concerned conduct that "occurred at about the same time" as the charged conduct. 204 F.3d at 44. Similarly, in United States v. Gonzalez, 110 F.3d 936 (2d Cir. 1997), the case cited in Carboni for the intrinsic evidence standard, the court rejected the defendants' Rule 404(b) appeal where the intrinsic evidence admitted occurred on the same night as the charged conduct. The Gonzalez court concluded that the district court had properly admitted limited evidence concerning an attempted robbery that took place just before the defendants were arrested for possessing firearms. The court found that, among other factors, evidence of the attempted burglary "provide[d] crucial background evidence that gave coherence to the basic

sequence of events that occurred on the night" of the defendants' arrests. Id. at 942. Thus, although the Second Circuit's intrinsic evidence standard appears at first glance to be fairly broad, in practice, its usage has often been limited to instances where the intrinsic evidence is contemporaneous with the charged conduct. Here, the two year gap between the events covered by the proffered testimony and those charged in this case, requires that the evidence be admitted, if at all, under Rule 404(b).

The second consideration that weighs in favor of applying Rule 404(b) is the value that a limiting instruction will have in ensuring that the jury does not view the defendants' alleged prior conduct as evidence of the defendants' propensity to engage in criminal activity. In the absence of such a limiting instruction, there exists a legitimate concern that the jury might misapply this evidence to conclude that if the defendants engaged in criminal conduct prior to the charged conspiracy, then the conduct at issue in these charges must also be criminal.

Turning to a consideration of the proffered testimony under Rule 404(b), I find that it is admissible. The Second Circuit uses an "inclusionary" approach to the Rule, admitting evidence of prior crimes, wrongs or acts "unless it is introduced for the sole purpose of showing the defendant's bad character, or unless it is overly prejudicial under Fed.R.Evid. 403 or not relevant under Fed.R.Evid. 402." United States v. Pascarella, 84 F.3d 61, 69 (2d Cir. 1996); United States v. Edwards, 342 F.3d 168, 176 (2d Cir. 2003). Under this approach, such evidence must be (1) offered for a proper purpose, (2) relevant, and (3) substantially more probative than prejudicial. United States v. Downing, 297 F.3d 52, 58 (2d Cir. 2002). Additionally, the district court should provide the jury with an appropriate limiting instruction concerning the evidence if the defendant so requests. Id.

Here, the evidence is being offered for the proper purpose of showing how "conspiracies evolved, and how illegal relationships and mutual trust developed between co-conspirators." United States v. Diaz, 176 F.3d 52, 80 (2d Cir. 1999); see also United States v. Pipola, 83 F.3d 556, 566 (2d Cir. 1996) ("One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case. Such proof may also be used to help the jury understand the basis for the co-conspirators' relationship of mutual trust.") (citations omitted). The admission of prior bad acts in conspiracy cases is an area where the "Second Circuit has afforded significant leeway," Naktalev, 325 F. Supp. 2d at 371 (collecting cases), and the government's proposed testimony fits squarely within it. Based on the government's representations to the court, the cooperating witnesses' testimony will detail how they entered into relationships of criminal trust with the defendants prior to the charged conspiracy and also will outline the manner in which the conspiracy was formed and functioned.

Additionally, depending on the defenses offered by Brown and Dolney, the testimony may be admissible as probative of their knowledge or intent. Without more knowledge concerning these defenses it is premature to fully address this issue and ordinarily this might require that the government be prohibited from presenting the evidence in its case in chief. However, because I have found that the evidence is admissible for the purpose of providing background information concerning the conspiracy and the relationships of the alleged co-conspirators, such an approach is unnecessary here.

This testimony also bears on issues relevant to the trial. Establishing that the defendants had formed a relationship of criminal trust with the cooperating witnesses prior to the charged

5

conspiracy may help to explain their willingness to enter into the alleged conspiracy that is the subject of the charges they face. Additionally, the testimony provides relevant background information that completes the story of the conspiracy, explaining how it originated and how it functioned. While the defendants raise various objections to the relevance of this testimony, none of them are of sufficient merit to warrant its exclusion. For instance, Brown argues that evidence showing that he received kickbacks from Dolney and a cooperating witness in exchange for causing brokers to fraudulently solicit their clients to purchase stocks from Dolney and the cooperating witness at inflated prices is relevant only to his propensity for criminal conduct. However, such evidence goes directly to both the issues of how relationships of criminal trust were formed between the alleged co-conspirators and how the alleged conspiracy functioned.

Finally, I find that the relevance of the proposed testimony substantially outweighs its danger of prejudice. See Fed.R.Evid. 403. Because the proposed testimony addresses activity that does "not involve conduct any more sensational or disturbing than the crimes" charged, it is unlikely that it will inflame the jury or prejudice the defendants. United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992) (internal citations and quotations omitted). Further, at the defendants' request, I will provide a limiting instruction to the jury concerning the proper purposes for which they may use this evidence in their deliberations.

For these reasons, the government's proposed testimony concerning the uncharged conduct of the defendants is admitted pursuant to Fed.R.Evid. 404(b).

## II. Glossary of Securities Terms

On March 22, 2005, the government moved to introduce a glossary of securities-related

terms into evidence to aid the jury's understanding of the testimony by its expert witness Professor Steven Thel. While the government acknowledges that there is limited authority to support the admission into evidence of such a glossary, it contends that providing the jury access to relevant terms that may be unfamiliar to them, such as "market-maker" or "broker-dealer," will aid their comprehension of the testimony and thus further the underlying purpose of expert testimony itself. The government consents to a limiting instruction advising the jury that the glossary is only a summary of Professor Thel's testimony and is not itself independent evidence, but nonetheless still seeks to have the glossary available as an exhibit for the jury's use during deliberations. Of the defendants, only Dolney has responded to this motion. He argues that the glossary is not admissible evidence because it does not qualify under Fed.R.Evid. 1006, which allows the contents of voluminous writings to be presented in chart or summary form. Dolney also contends that it is premature to decide this issue in advance of trial.

The government's proposed glossary is not evidence, but rather a pedagogical device intended to aid the jury's understanding of testimony concerning a complex subject. See Verizon Directories Corp. v. Yellow Book USA, Inc., 331 F. Supp. 2d 136, 139 (E.D.N.Y. 2004) (Weinstein, J.) ("Pedagogical devices or demonstratives have long been recognized in the form of summaries, charts and other aids used by parties 'to organize or aid the jury's examination of testimony or documents which are themselves admitted into evidence.'") (quoting 6 Margaret A. Berger, et al., Federal Evidence § 1006.04[2] (Joseph McLaughlin, ed. 2000). While it is proper for pedagogical devices "to be shown to the jury, to assist in its understanding of testimony and documents that ha[ve] been produced" they should not be "admitted as an exhibit or taken to the jury room." United States v. Buck, 324 F.3d 786, 791 (5th Cir. 2003); see also United States v.

Janati, 374 F.3d 263, 273 (4th Cir. 2004) ("These 'pedagogical' devices are not evidence themselves, but are used merely to aid the jury in its understanding of the evidence that has already been admitted."). The reason that pedagogical devices are not admitted as evidence is that, unlike exhibits admitted under Fed.R.Evid. 1006, they do not summarize evidence too voluminous to be effectively presented to the jury, but only summarize evidence that has actually been presented. See Buck, 324 F.3d at 790-91. As a result, the use of pedagogical devices is governed not by Rule 1006 but by Rule 611(a), which directs, in part, that the "court shall exercise reasonable control over the mode and order . . . of presenting evidence . . ." See Janati, 374 F.3d at 273 ("displaying such charts is always under the supervision of the district court under Rule 611(a), and in the end they are not admitted as evidence.").

Here, the glossary of securities terms is intended to aid the jury's comprehension of Professor Thel's testimony concerning the securities markets. As a result, the glossary only summarizes portions of his testimony and does not present any independent evidence and so may not be admitted into evidence, nor made available to the jury during its deliberations. The government, however, may provide the glossary to the jury for its use during Professor Thel's testimony. At that time, the court will, upon the defendants' request, offer a limiting instruction to the jury indicating that the glossary is not evidence and is intended only to aid its comprehension of the testimony.

## III. Introduction of Goldenberg's Proffer Session Statements

On May 20, 2005, the government submitted a letter to the court alerting it to the possibility that the government might seek to admit at trial statements made by Goldenberg during a proffer session with the government. The proffer agreement that Goldenberg entered

8

into with the government allows the government to use Goldenberg's statements as substantive evidence to cross examine him if he testifies, or, more generally, "to rebut, directly or indirectly, any evidence offered or elicited, or factual assertions made, by or on behalf of [Goldenberg] at any stage of a criminal prosecution." (Gov't May 20, 2005 Lttr. at 2 (quoting March 9, 2005 proffer agreement)). In its letter, the government also set out the redactions that it would make to Goldenberg's statements in order to comply with Bruton v. United States, 391 U.S. 123 (1968), and its progeny before offering them into evidence. Brown, the defendant principally implicated by Goldenberg's statements, opposes their admission because he argues that the government's proposed redactions are insufficient to secure his rights under the Sixth Amendment's Confrontation Clause. He requests either that he be severed from his co-defendants or that the government be required to further redact the statements.

In Bruton, the Supreme Court held that the introduction of the confession of a non-testifying co-defendant that implicates another defendant in a crime violates the Confrontation Clause of the Sixth Amendment. Id. at 126. The Court also recognized that a limiting instruction would be incapable of protecting the incriminated defendant's rights at a joint trial. Id. at 137. The Court subsequently limited Bruton's scope in Richardson v. Marsh, 481 U.S. 200 (1987), when it held that the Confrontation Clause is not violated by the introduction of a confession redacted so that it does not facially incriminate the defendant accompanied by a limiting instruction. Id. at 211. In Gray v. Maryland, 523 U.S. 185 (1998), the Court addressed the question left open in Richardson of whether Bruton is violated by replacing the defendant's name with a symbol or neutral pronoun. It held that Bruton does apply to "statements that, despite redaction, obviously refer directly to someone, often obviously [to the defendant], and

which involve inferences that a jury ordinarily could make immediately . . ." Id. at 196. The Court further cautioned that attention must be paid to the "*kind* of, not the simple *fact* of, inference." Id. (emphasis in original).

With these concerns in mind, it is clear that the government's proposed redactions are insufficient to safeguard Brown's Sixth Amendment rights. Although Brown's name has been redacted, it would require only the smallest of inferences for a reasonable juror to conclude that Brown is the omitted individual identified by Goldenberg. The most significant flaw with the redactions is that they refer directly to a specific individual whose identity is obviously being obscured from the jury. For instance, in the first statement, the government proposes to redact Brown's name and inform the jury that "Todd and [another individual] ran Continental and shared an office." (Gov't May 20 Lettr. at 4.) While on its face this statement seems innocuous enough, taken in context, it clearly raises questions about the identity of the other unnamed "individual." Because Goldenberg worked at Continental and had sufficient recollection of the experience to recall Todd's name and even to know that he shared his office with another "individual", it raises the question of why Goldenberg did not name that other "individual." Although a juror might conceivably conclude that Goldenberg simply forgot this person's name when he spoke to the government, the more reasonable conclusion will likely be that the omitted individual is sitting at the defense table.

Any lingering questions that a juror might have about the link between Goldenberg's redacted statements and Brown would be quickly cleared up by the government's case. As part of its Rule 404(b) evidence, the government intends to offer testimony from a cooperating witness that while he was a registered broker at Russo Securities, Brown allowed unlicensed

brokers to use his name when making calls and also that the cooperating witness observed Goldenberg doing so. When this evidence is linked with Goldenberg's redacted statement that he "began calling clients under the name of [another individual], who was a registered broker with Russo Securities," Gov't May 20 Lttr. at 4, the logical conclusion is that Brown was that individual. Although this conclusion does require an inference, it is a very small one and thus falls within Bruton's scope. Cf. United States v. Lung Fong Chen, 393 F.3d 139, 150 (2d Cir. 2004) (holding that redacted proffer session statements were "safely outside of Bruton's scope because substantial evidence was necessary to link" the defendants to the incriminating statements at issue).

Accordingly, the government is directed to resubmit its proposed redactions within seven (7) days of the date of this M&O. The statements should be further redacted to avoid problems of the kind discussed above.

## IV. Conclusion

For the foregoing reasons, the government's evidence of an uncharged conspiracy may be admitted under Rule 404(b); the glossary of securities terms will be provided to the jury during Professor Thel's testimony, but will not be admitted into evidence or made available to the jury during its deliberations; and the government is directed to resubmit revised redactions within seven (7) days of the date of this M&O.

SO ORDERED.

Dated: September 1, 2005    /s/ Nicholas G. Garaufis
      Brooklyn, NY    NICHOLAS G. GARAUFIS
           United States District Judge