UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

UNITED STATES OF AMERICA,

                - against -                    <u>MEMORANDUM & ORDER</u>

                     04-CR-159 (NGG)

WILLIAM BROWN and
VLAD GOLDENBERG,
                                              **NOT FOR PUBLICATION**

               Defendants.

-------------------------------------------------------X

GARAUFIS, United States District Judge.

Defendants William Brown ("Brown") and Vlad Goldenberg ("Goldenberg") were convicted on October 14, 2005, following a three-week jury trial before this court, of five substantive counts of securities fraud and of conspiracy to commit securities fraud. In addition, Brown was found guilty of conspiracy to commit money laundering and of nine substantive counts of money laundering. On October 17, 2005, the jury rendered a verdict in the concomitant forfeiture proceeding, requiring Brown and Goldenberg to forfeit $1,231,438.20 generated as proceeds of the securities fraud scheme. The jury also rendered a forfeiture verdict against Brown in connection with the money laundering convictions requiring him to forfeit $1.231 million and the real property located at 100 St. Mary's Avenue, Staten Island, New York. ("100 St. Mary's property")[1] in connection with the money laundering conspiracy conviction and $152,500.00 in connection with the substantive money laundering counts.

---

[1] During the course of the trial, the 100 St. Mary's Avenue property was sold and the net proceeds from the sale were placed in an escrow account pending resolution of the trial. Thus, all references to the forfeited "property" known as 100 St. Mary's Avenue in fact refers to the proceeds from the sale of that property.

Both defendants now seek post-trial relief. Defendant Brown has brought a motion pursuant to Rule 33 of the Federal Rules of Criminal Procedure ("Rule 33") seeking a new trial on various grounds. Brown also challenges the forfeiture judgment entered against him pursuant to Fed. R. Crim. P. 32.2(a) ("Rule 32.2(a)"). (See generally Motion of William Brown dated November 28, 2005 ("Brown Mot.")). Defendant Goldenberg also moves the court, pursuant to Rule 33, for an order setting aside the guilty verdicts and for a new trial. (See generally Motion of Vlad Goldenberg dated November 23, 2005 ("Goldenberg Mot.")).

For the reasons stated below, the Defendants' motions are DENIED.

**I.     The Trial**

At trial, the Government presented evidence of a "boiler room" securities fraud scheme, which operated from October 2000 through January 2003, out of the Staten Island branch office of Delta Asset Management ("Delta"), a brokerage firm. Brown was one of Delta's managers and Goldenberg was a stock broker employed there. Pursuant to the fraudulent scheme, brokers at Delta convinced Delta customers to purchase stock in certain "house stocks" at artificially inflated prices. The stock promoters who sold the house stocks, in turn, paid Brown, Goldenberg and other Delta employees kickbacks, which constituted as much 50% of the stock price paid by the brokerage customers – unbeknownst to them – totaling millions of dollars.

The Government's evidence was presented through three general categories of witnesses. One group of witnesses consisted of law enforcement and other regulatory officials, and included the following: (1) testimony of an agent of the Federal Bureau of Investigation ("FBI") who investigated the activity at Delta; (2) testimony of two staff members of the Securities and Exchange Commission ("SEC"), which was involved in investigating securities violations

committed by Delta in a related civil matter; and (3) testimony of an attorney of the National Association of Securities Dealers ("NASD").

The second category of testimony was the cooperating witnesses. These witnesses were former co-defendants of Brown and Goldenberg who pleaded guilty to various charges and agreed to cooperate with the Government in the trial against Brown and Goldenberg. The cooperating witnesses who testified at trial included: (1) Nick Pirgousis, the stock promoter who brought the majority of the house stock deals to Delta; (2) Mario Rodriguez (a.k.a. Mario Casias), who worked as a licensed stock broker at Delta's Staten Island branch during the relevant time period; (3) Mark Shreyberg, another employee at Delta's Staten Island office who was an unlicensed stock broker; and (4) Roman Pasinkovsky, who was at one time a manager of Delta's Staten Island branch office. All of the cooperating witnesses implicated Brown and Goldenberg in the fraudulent scheme and corroborated the Government's theory of the case.

Finally, the third group of witnesses who testified at trial were certain victims of the stock fraud scheme. These witnesses included Scott Frane, who received a call from "Mario Casias" in 2001 and subsequently purchased approximately $50,000 worth of the so-called house stocks without being informed of the 50% commission that Casias was receiving on the sale. Kelly McCrann, another victimized investor, took the stand and testified concerning the several hundreds of thousands of dollars he invested through "Mario Casias" at Delta. Finally, Henry Whitfield and Wilbur Krusell both testified regarding their victimization concerning stock purchased through Delta, stating that they would not have invested had they known of the scheme in place at Delta.

The evidence adduced at trial established that Brown, along with his business partner

Gary Todd, ran the Staten Island branch of Delta Asset Management, and that Brown and Goldenberg, along with others, participated in a large scale stock fraud scheme perpetuated by Delta, its managers and employees. As I presided over the trial, I see no reason to painstakingly summarize the over 1600-page trial transcript. Rather, I will address portions of the evidence in the context of specific arguments raised by the defendants in the instant post-trial motions. Suffice it to say that I have no reservations concluding that based on the evidence presented, the jury could have reasonably concluded that both Brown and Goldenberg were guilty of the crimes charged.

**II.     Discussion: Defendants' Rule 33 motions**

Rule 33 provides that, "upon the defendant's motion the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 1997). The Second Circuit has stated that a district court should exercise its authority to grant a Rule 33 motion only "in the most extraordinary circumstances." United States v. Locascio, 6 F.3d 924, 949 (2d Cir. 1993). "It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992). In the typical case, the trial judge "must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses." United States v. LeRoy, 687 F.2d 610, 616 (2d Cir. 1982). Moreover, even where the trial judge rejects some portion or all of the testimony of a witness or witnesses, the defendant is "not automatically entitle[d]" to a new trial. Sanchez, 969 F.2d at 1414.

Both Defendants argue that they should be afforded a new trial pursuant to Rule 33 on the grounds that there was insufficient evidence adduced at trial to support their convictions. As a general matter, I conclude that there was sufficient evidence presented at trial to support the guilty verdicts rendered against both defendants, and their Rule 33 motions are accordingly denied. I will nonetheless briefly address the Defendants' specific arguments in turn below.

1. **The Supreme Court case of <u>Dura Pharmaceuticals</u> does not hold that the Government must prove causation in a criminal securities fraud case**

Brown and Goldenberg each argue that the Government failed to meet its burden of proving guilt beyond a reasonable doubt inasmuch as it was not proven at trial that the fraudulent conduct of the Defendants proximately caused investors to lose money. Defendant Brown argues that there was "never any evidence establishing a nexus between the fraudulent acts and the loss to the 'victims.'" (Brown Mot. ¶ 18). Defendant Goldenberg urges that there was "no credible proof of any fraudulent representation by Goldenberg of a present or past fact which, as a direct consequence, proximately caused investor loss." (Goldenberg Mot. at 16).

Both Defendants' base their positions on the recent Supreme Court case of <u>Dura Pharmaceuticals v. Broudo</u>, 544 U.S. 336, 125 S.Ct. 1627 (2005). In <u>Dura</u>, the Court held that a "private plaintiff who claims securities fraud must prove that the defendant's fraud caused an economic loss." <u>Dura</u>, 125 S.Ct. at 1629. Brown and Goldenberg assert that <u>Dura</u> applies in the criminal context and accordingly requires that the Government also prove a causal connection between the fraudulent conduct and the victims' economic loss. Notwithstanding the Defendants's arguments to the contrary, <u>Dura</u> was not held to apply in the criminal context and the Defendants reliance on the case is misplaced. <u>Dura</u> explicitly addressed the loss causation

5

requirement in a civil suit brought by a private plaintiff pursuant to the Private Securities Litigation Reform Act of 1995. See id. at 1631; 15 U.S.C. § 78u-4(b)(4). Its holding does not extend to the criminal context, and Dura therefore does not provide a basis for finding that there was insufficient evidence to support the Defendants' securities fraud convictions.

> **2. Brown's motion to vacate the money laundering convictions due to insufficient evidence is without merit**

Defendant Brown asserts that there was insufficient testimony and physical evidence presented at trial to prove that he was guilty of conspiracy to commit money laundering and money laundering. This court disagrees. At trial, the testimony of numerous witnesses and supporting documentary evidence established that Brown and Gary Todd created B&G Consulting, which the Government proved was used by both Brown and Todd to launder money and funnel kickback payments. There was also evidence presented that showed that Brown was involved in money laundering through certain jewelry stores and that Brown personally participated in providing cash payments to Delta employees.

Brown's convictions for money laundering and for conspiring to launder money are supported by sufficient evidence and will not be vacated.

> **3. Defendants' motions to vacate the securities fraud convictions based on insufficient evidence are without merit**

Brown and Goldenberg have both moved for vacatur of the substantive securities fraud convictions and the conspiracy to commit securities fraud conviction rendered against them based on insufficient evidence grounds. (See Goldenberg Mot. at 18; Brown Mot. ¶¶ 13-18). As I have noted above, I find that there is no basis to grant Defendants' Rule 33 motions on the grounds of insufficient evidence. As I find there was ample evidence to support these

convictions, there certainly will be no "manifest injustice" in allowing the convictions to stand. See Ferguson, 246 F.3d at 134 (2d Cir. 1997). Rather, I defer to "the jury's resolution of the weight of the evidence and the credibility of the witnesses," LeRoy, 687 F.2d at 616, and accordingly deny both Brown's and Goldenberg's motion on these grounds.

### 4. Brown's motion to vacate the forfeiture judgments is without merit

Once the guilt phase of the trial concluded and the jury found the Defendants guilty on all counts, the jury considered the Government's forfeiture charge, which sought forfeiture of assets in excess of $2.6 million as well as the 100 St. Mary's Avenue property. The jury returned a verdict in the forfeiture matter in the amount of $1.231 million, both for the securities fraud counts and the money laundering counts, and for forfeiture of the St. Mary's Avenue Property. With respect to the securities fraud forfeiture, Brown and Goldenberg were held jointly and severally liable; Brown is individually liable for the money laundering forfeiture in the same amount because he alone was convicted of the money laundering crimes. The two judgments, however, in effect are concurrent judgments. Brown objects to this verdict on several counts.

First, Brown argues that the forfeiture judgment is "inconsistent with the evidence presented" in that the jury did not agree with the Government's proposed forfeiture amount, but rather came up with a number of its own which Brown maintains "could not be calculated by the defendant, counsel, or even the prosecution." (Brown Mot. ¶ 20). That the parties, their counsel, or even this court cannot discern the exact basis for the jury's calculation of the forfeiture amount does not render the verdict invalid. See United States v. Powell, 469 U.S. 57, 67 (1984) ("But with few exceptions, once the jury has heard the evidence and the case has been submitted, the litigants must accept the jury's collective judgment. Courts have always resisted inquiring into a

7

jury's thought processes; through this deference the jury brings to the criminal process, in addition to the collective judgment of the community, an element of needed finality.") (internal citations omitted).

Brown further claims that the forfeiture judgments are inconsistent and therefore must be vacated because "the 'securities judgment' is 'joint and several' between both this defendant and the co-defendant, Vlad Goldenberg, but the money laundering conspiracy judgment is against this defendant alone." (Brown Mot. ¶ 21). Brown argues that because the Defendants were found liable *together* for the securities fraud forfeiture, but Brown was found liable individually for the money-laundering forfeiture, both forfeiture verdicts must be dismissed. The argument is without merit. The "inconsistency" that Brown points out is simply reflective of the fact that Brown and Goldenberg were both found guilty of the securities fraud crimes, but only Brown was charged and convicted of the money laundering counts. The forfeiture judgments are not inconsistent and will not be vacated on these grounds.

Brown also moves to set aside the forfeiture of the 100 St. Mary's Avenue property arguing (1) that he was never the owner of this property and thus has no right to forfeit it; and (2) that he was not provided adequate notice of the Government's intention to seek forfeiture of this asset pursuant to Fed. R. Crim. P. 32.2(a). (See Brown Mot. ¶¶ 37-40).

With respect to Brown's ownership of the 100 St. Mary's Avenue property, he claims that 100 St. Mary's Avenue Corporation is the owner of the property and that prior to the indictments in the instant matter, ownership of the corporation was transferred to Brown's wife, who assumed all of the property's liabilities including the mortgage. (Id. ¶ 38). Brown argues that these facts render the forfeiture of the property improper. The Government responds that

Brown's argument misinterprets the law and procedure governing forfeiture judgments. (See Memorandum of Law in Opposition to Defendants' Post-Trial Motions ("Govt. Mem. Opp'n"), at 44-45).

The Government is correct. The verdict in the forfeiture proceeding required Brown to forfeit only *his* interest in the 100 St. Mary's Avenue property. To the extent that his wife has a legitimate interest in the property, she is entitled to bring that to the court's attention in a separate proceeding pursuant to 21 U.S.C. § 853. But "no party claiming an interest in property subject to forfeiture . . . may intervene in a trial or appeal of a criminal case involving the forfeiture of such property." 21 U.S.C. § 853(k). The proper course of action for a third party to raise his/her interest in a forfeited asset is to "petition the court for a hearing to adjudicate the validity of his alleged interest in the property" pursuant to 21 U.S.C. § 853(n) and Fed. R. Crim. P. 32.2(c). See, e.g., Borich v. United States, No. CR. 03-166, 2005 WL 1668411, at *2 (D. Minn. July 18, 2005); United States v. Weidner, No. 02-CR-40140, 2004 WL 432251, at *1 (D. Kan. Mar. 4, 2004).

Moreover, it is well established that there can be criminal forfeiture of property that is held in a third party's name if the Government believes that the third party is just a nominee. See, 32 Am. J. Crim. L. 55, Stefan D. Cassella, *Criminal Forfeiture Procedure: An Analysis of Developments in the Law Regarding the Inclusion of a Forfeiture Judgment in the Sentence Imposed in a Criminal Case*, at *84 (Fall 2004). Thus, there is no reason to vacate the forfeiture order regarding the 100 St. Mary's Avenue property due to Brown's alleged lack of ownership over the property.

Brown also urges dismissal of the portion of the forfeiture verdict concerning the 100 St.

9

Mary's Avenue property on the grounds that he was never provided adequate notice of the Government's intent to seek the forfeiture. (See Brown Mot. ¶ 40). Rule 32.2(a) provides that "[a] court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute." Fed. R. Crim. P. 32.2(a). The Advisory Committee's Notes to this provision explain further: "As courts have held, subdivision (a) is not intended to require that an itemized list of the property to be forfeited appear in the indictment or information itself." Fed. R. Crim. P. 32.2(a) advisory committee's note (2000). Rather, the government is required to "give the defendant notice that it will be seeking forfeiture in accordance with the applicable statute." Id. The superseding indictment in this matter, filed with the court on January 25, 2005, explicitly included criminal forfeiture allegations which track the applicable statutes. (See Superseding Indictment ¶¶ 31, 34). This alone is adequate Rule 32.2(a) notice, see United States v. Grammatikos, 633 F.2d 1013, 1023-24 (2d. Cir. 1980), and Brown's motion to dismiss the forfeiture verdict regarding 100 St. Mary's Avenue on the grounds of insufficient notice is denied.

**5.    No Credible evidence has been offered to show that cooperating witness Mark Shreyberg perjured himself at trial**

Brown next argues that it is necessary to vacate his guilty verdicts and grant a new trial because there is "newly discovered evidence" that a cooperating witness who testified at trial for the Government, Mark Shreyberg, perjured himself on the stand. (Brown Mot. ¶ 22-23). Mark Shreyberg is the son-in-law of Gary Todd, a former co-defendant of Brown's, Brown's former business partner in B&G Consulting, and former co-manager of Delta's Staten Island office. At

trial, Shreyberg was asked if one of the reasons he had decided to cooperate with the government was so that his father-in-law Gary Todd might receive some leniency in his sentencing. (See Trial Transcript ("Tr.") at 464). Specifically, on cross-examination, Shreyberg was asked: "Was part of your plea agreement and your cooperation to also give [your father-in-law] a break in his sentencing," to which Shreyberg answered, "no." (Id.).

Brown's so-called "newly discovered evidence" of Shreyberg's perjury is allegedly found in a letter submitted by Shreyberg's attorney to the court in connection with Gary Todd's sentencing, and in the Sentencing Memorandum of Gary Todd submitted by Todd's attorney in advance of his sentencing. (See Docket Entries # 290, 291). In both of these documents, the respective attorneys indicate that Todd was instrumental in encouraging his son-in-law Shreyberg to cooperate with the Government in the instant matter. While this may be true, it in no way proves that Shreyberg perjured himself on the stand. That Todd may have encouraged Shreyberg to become a cooperator does not suggest that it was part of Shreyberg's plea agreement to decrease Todd's sentence. Indeed, Shreyberg's Cooperation Agreement, attached to the Government's Opposition Brief, states no such thing. Rather, it explicitly states that "no promises, agreements or conditions have been entered into other than those set forth in this agreement." (Govt. Mem. Opp'n, Ex. A, at ¶ 12). As there is no new evidence suggesting that Shreyberg committed perjury, this will not serve as grounds to vacate Brown's convictions. The Defendant's motion is denied.

**6.  Goldenberg's motion for a new trial based on the jury instructions concerning Goldenberg's efforts to obstruct justice is without merit**

Goldenberg moves for a new trial on the grounds that the court improperly instructed the

jury as to the evidence concerning Goldenberg's alleged involvement in "coaching" Mario Rodriguez to lie before the SEC. (See Goldenberg Mot. at 18). The full instruction given stated:

> You have also heard testimony that the defendant Vlad Goldenberg coached Mario Rodriguez, and that the defendant William Brown coached Mario Rodriguez, Roman Pasinkovsky and Nick Pirgousis, in substance, to lie in their testimonies before the SEC and NASD.
> The defendants are not on trial for attempting to influence the statements of co-conspirators and you may not consider the evidence as a substitute for proof of guilt in this case.
> However, if you find beyond a reasonable doubt that the defendant you are considering did attempt to influence the statements of a co-conspirator, you may – but are not required to – infer that the defendant believed that he was guilty of the crimes for which he is here charged.
> Whether or not evidence of the defendants' attempted influence of a co-conspirator[']s [statement] shows that the defendant believed that he was guilty of the crime for which he is now charged, and the significance, if any, to be given such evidence, is for you, the jury, to decide.

(Tr. at 1584-85).

There is nothing improper about this "consciousness of guilt" instruction. See United States v. Malpiedi, 62 F.3d 465, 467 (2d Cir. 1995) ("This testimony was direct evidence of [defendant's] obstruction of justice and of his consciousness of guilt of the other charges."); United States v. Robinson, 635 F.2d 981, 986 (2d Cir. 1980) (finding evidence of obstruction of justice properly admissible as evidence of consciousness of guilt). It comports with the evidence presented at trial and provides no basis for granting Goldenberg's Rule 33 motion.

> **7.  There were no errors committed by this court before or during trial that warrant vacating Defendants' convictions or granting a new trial**

Brown raises several additional alleged errors by the court that he believes provide a basis for a new trial pursuant to Rule 33. These will each briefly be addressed in turn.

>   **(a)  Discovery**

Brown argues that "the discovery process was clearly mishandled," in that given the extremely large number of documents disclosed in the discovery phase of this matter, the Government did not timely turn over materials nor do so in a sufficiently workable manner. (Brown Mot. ¶ 26). Although all parties and this court concede that the discovery in this trial was voluminous, there has been no violation of the Defendants' rights as a result of the timing or manner in which discovery was turned over. Approximately 16 months before trial, the majority of documents were turned over to defendants for inspection with an index of the documents provided. (Govt. Mem. Opp'n, at 35). The remaining documents were also turned over in a timely fashion, and the Government even electronically scanned a portion of the discovery materials. Moreover, the Government's trial exhibit list and Rule 3500 material was all turned over in accordance with prevailing precedent and the time-lines set by this court. See 18 U.S.C. § 3500; Dolney, 2005 WL 1076269, at *6-8. The discovery schedule and disclosure process does not provide grounds for Brown's sought post-trial relief.

### (b) Goldenberg's proffer statements

Brown argues that he was prejudiced by the court's decision not to sever his trial from Goldenberg's, specifically based on the fact that the court permitted the Government to re-open its case after summation by Goldenberg's attorney. Brown argues that this "appearance of irregularity lead [sic] to a quick verdict against Mr. Goldenberg, and consequently this 'taint' certainly affected the deliberations against Mr. Brown." (Brown Mot. ¶ 27). Goldenberg similarly challenges the court's decision to allow the Government to reopen its case and to admit proffer statements of Goldenberg's. (Goldenberg Mot. at 18-19).

Some background is necessary to understand the motion on this point. Co-defendant

13

Goldenberg, prior to trial, participated in several proffer sessions with the Government. Although Rule 410 of the Federal Rules of Evidence provides that, in general, statements made in the course of plea discussions that do not ultimately lead to a guilty plea are inadmissible at trial, see Fed. R. Evid. 410, a defendant may waive the protections of Rule 410 by entering into a voluntary agreement with the Government. United States v. Velez, 354 F.3d 190, 195-97 (2d Cir. 2004). Goldenberg executed such a Proffer Agreement with the Government, attached to the Government's brief as Exhibit C, which explicitly states that the Government may use Goldenberg's statements "as substantive evidence to rebut, directly or indirectly, any evidence offered or elicited, or factual assertions made, by or on behalf of [Goldenberg] at any stage of a criminal prosecution." (See Govt. Mem. Opp'n, Ex. C). The validity of Goldenberg's waiver is not at issue; rather the Defendants allege that the waiver was not triggered by the remarks of Goldenberg's attorney during summation.

Following summation, the Government moved to re-examine a witness who had testified previously to introduce Goldenberg's proffer statements concerning the fact that he had used Mario Rodriguez's name when speaking to certain clients to solicit their purchase of stocks. The Government argued that the waiver had been triggered because Goldenberg's counsel, in his summation, stated to the jury facts in contravention to Goldenberg's proffer statements. (See Tr. 1516-1519). The court granted the Government's motion and adheres to that ruling, i.e. I find that the waiver was triggered, and as a result the Government was correctly permitted to admit Goldenberg's statements. See United States v. Barrow, 400 F.3d 109, 116 (2d Cir. 2005). The statements admitted were also properly redacted so as to protect Brown's rights and to comply with Bruton v. United States, 391 U.S. 123 (1968). In an M&O dated September 23, 2005

14

(Docket Entry # 272), I ruled that these statements were properly redacted in accordance with Bruton, and I denied Brown's motion to sever his trial from Goldenberg's. These rulings will not be disturbed on the instant post-trial motions; the Defendants' Rule 33 motions on this basis are denied.

### (c) The Delta branch office agreement

Brown requests a new trial based on the court's admission into evidence of the "Delta Asset Management Branch Office Agreement" (marked as GX 503), arguing that the admission of this document as well as statements he made to the SEC violated his Fifth and Sixth Amendment rights to counsel. (Brown Mot. ¶ 28). Both of these issues were addressed in advance of or during the trial, and my decisions will stand. With respect to the SEC testimony, I determined that admission of this testimony would not violate Brown's constitutional rights, and I adhere to that ruling. (See Transcript of Status Conference dated Sept. 21, 2005). With respect to GX 503, the Delta branch office agreement, I found and continue to hold that the Government laid a proper foundation for authenticating the document pursuant to Fed. R. Evid. 901, and for admitting it into evidence. Any issues regarding whether or not Brown was familiar with the entire document properly were addressed on cross examination, as they go to the weight of the evidence, and not its admissibility. United States v. Tin Yat Chin, 371 F.3d 31, 38 (2d Cir. 2004) ("Rule 901's requirements are satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. Once Rule 901's requirements are satisfied, the evidence's persuasive force is left to the jury.") (internal quotations and citations omitted); see also SCS Communications, Inc. v. Herrick Co., Inc., 360 F.3d 329, 344-45 (2d Cir. 2004) (challenges to the reliability of evidence go to its weight, not its

admissibility). As I find that admission of the Delta branch agreement and of Brown's SEC testimony was proper, this admission provides no basis for a new trial or vacatur of the defendant's convictions.

### (d) 404(b) "bad acts" evidence

Brown and Goldenberg also both ground their Rule 33 motions on the admission at trial of certain "bad acts" evidence pursuant to Fed. R. Evid. 404(b). (See Brown Mot. ¶¶ 29-31; Goldenberg Mot. at 17). At the pre-trial, motion in limine stage I ruled that certain evidence of prior uncharged criminal conduct would be admissible as 404(b) evidence. See United States v. Dolney, 04-CR-159, 2005 WL 2129169, at *3 (E.D.N.Y. Sept. 1, 2005). The Defendants challenge specifically evidence concerning similar conduct which occurred at Russo Securities prior to the charged conduct in the instant indictment that occurred at Delta. The trial record does not support the argument that evidence was admitted in violation of my 404(b) ruling. Moreover, the record reflects that proper 404(b) limiting instructions were given to the jury regarding the purposes for which this evidence could be considered. (See Tr. at 1582-84). The Defendants' motions for a new trial on these grounds are denied.

### (e) Summation errors

Brown and Goldenberg raise two objections to the Government's summation comments. First, Brown argues that "[d]uring summation, the government was permitted to argue, over defense counsel's objection, that the jury could find that the stock purchases were illegitimate because the 'cooperating witnesses' had plead [sic] guilty." (Brown Mot. ¶ 32). Goldenberg similarly argues that "the Government was permitted to argue that the jury could find stock purchases were illegitimate because of co-conspirator pleas." (Goldenberg Mot. at 16). The

specific portion of the summation to which Defendants object is as follows:

> [GOVT:] Now, ladies and gentlemen, I submit to you that there is no reasonable dispute in this case that there was a conspiracy to commit securities fraud and actual securities fraud involving the five chop stocks charged in the indictment.
> Mr. Zuntag [Brown's attorney] tried to suggest to you in his opening that these were actually legitimate stock deals, but that is absurd. Do you think Nick Pirgousis, Roman Pasinkovsky, Mark Shreyberg, and Mario Rodriguez would have pleaded guilty to crimes with an aggregate possible –
>
> MR. LASHLEY:[2] Objection.
>
> THE COURT: Overruled.
>
> [GOVT:] – with an aggregate possible sentence ever [sic] a hundred years imprisonment if these were really good deals and there was no stock fraud? Of course not.

(Tr. at 1400).

In response to Defendants' motions, the Government draws the court's attention to the rule in this circuit that "when a jury has been informed that a co-defendant has pleaded guilty to a crime, the trial judge should instruct the jury that they may not consider that guilty plea as evidence of the defendant's guilt." United States v. Ramirez, 973 F.2d 102, 105 (2d Cir. 1992). In the present case, proper jury instructions were given:

> You have heard testimony from cooperating witnesses, Mario Rodriguez, Mark Shreyberg, Roman Pasinkovsky, and Nick Pirgousis, all of whom admitted to you their own involvement in criminal conduct, including some of the conduct charged in the indictment. These cooperating witnesses have all pleaded guilty to charges arising from the same facts as this case. You are to draw no inferences of any kind about the guilt of the defendants on trial from the fact that prosecution witnesses pled guilty to similar or related charges.

(Tr. at 1587). To the extent that the Government *may* have improperly suggested to the jury that

---

[2] Mr. Lashley represented Vlad Goldenberg at trial.

17

it infer from the co-defendants' guilty pleas the guilt of Brown and Goldenberg,[3] this error was cured by the jury instruction given, and moreover, did not compromise the integrity of Defendants' trial given the entire argument before the jury. See United States v. Cruz, 797 F.2d 90, 93 n.1 (2d Cir. 1986) (finding prosecutor's summation comment "indefensible" but nonetheless to have not deprived the defendant of a fair trial when " viewed against the entire argument before the jury"); United States. v. Wilkinson, 754 F.2d 1427, 1435 (2d Cir. 1985) (in determining whether to grant a new trial based on improper summation comments, "[t]he test is whether the statements, viewed against the entire argument before the jury deprived the defendant of a fair trial") (internal quotation marks and citation omitted).

Brown and Goldenberg both offer a second impropriety during summation as grounds for a new trial, namely that the Government "argued in its summation that the jury could find that the defendants had knowledge of this criminal activity because they were paid in cash." (Brown Mot. ¶ 34; Goldenberg Mot. at 17). The Government properly responds that this argument is without merit. (Govt. Mem. Opp'n at 29). The Government suggested in its summation that it could be inferred from the Defendants' cash payments to one another that they were involved in illegal activity. To do so was perfectly within the bounds of the law as "[a] prosecutor is properly given wide latitude in summation, and is entitled to comment upon evidence presented at trial and to urge the jury to draw reasonable inferences from that evidence." Moore v. Greiner, 02 Civ.6122, 2005 WL 2665667, at *15 (S.D.N.Y. Oct. 19, 2005) (internal citation omitted); see also United States v. Roldan-Zapata, 916 F .2d 795, 807 (2d Cir. 1990) ("In summation counsel

---

[3] I note for the record, however, that I make no finding as to whether the summation statements were proper or improper.

18

are free to make arguments which may be reasonably inferred from the evidence presented.") (citations omitted).

The objections to the Government's summation raised by Brown and Goldenberg do not warrant Rule 33 relief; the Defendants' motions for a new trial on these grounds are denied.

### (f) Co-conspirator statements

Finally, Brown maintains that his Sixth Amendment right to confrontation was violated by the admission at trial of certain co-conspirator statements. Brown alleges that admission of these statements, where the declarant did not take the stand and therefore was not subject to cross examination, violates the dictates of Crawford v. Washington, 541 U.S. 36 (2004). This argument is wholly without merit. Indeed, in the Crawford opinion itself, the Court stated in dicta that statements "in furtherance of a conspiracy" are "by their nature [ ] not testimonial," Crawford, 541 U.S. at 56, and the Second Circuit has recently confirmed as much. The challenged statements are part and parcel of co-conspirators' statements made in the course of and in furtherance of Defendants' conspiratorial plan to mislead investigators. See United States v. Stewart, 433 F.3d 273, 291 (2d Cir. 2006). The Defendant's motion for a new trial on the basis of a Crawford violation is denied.

## III. Conclusion

For all the aforementioned reasons, the Defendants' motions pursuant to Fed. R. Crim. P. 33 are hereby denied.

SO ORDERED.

Dated: April 4, 2006
      Brooklyn, NY

                              /s/
                      NICHOLAS G. GARAUFIS
                      United States District Judge